UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ANDREW M. THALER, ESQ., as Chapter 7
Trustee of Korn & Spirn,

                Plaintiff,

-against-

ELLEN KORN,

                Defendant.
------------------------------------------------------------X

**OPINION AND ORDER**
**13-CV-3768 (SJF)**

FEUERSTEIN, District Judge:

Before the Court is defendant's motion to dismiss[1] plaintiff's complaint pursuant to Federal Rules of Civil Procedure ("FRCP") 8(a)(2), 9(b) and 12(b)(6). For the following reasons, defendant's motion is denied as to claims one (1), two (2), three (3), four (4), six (6), seven (7) and eight (8). Claim five (5) is denied without prejudice to renew at trial.

**I.    Background**

*The Parties*

Andrew Thaler, Esq. ("plaintiff" or "trustee"), the Chapter 7 trustee of the bankruptcy estate ("estate") of Korn & Spirn ("debtor" or "Korn & Spirn"), brings this adversary proceeding against Ellen Korn ("defendant"), widow of the debtor's partner Jay Korn.[2] Compl. p. 1; ¶ 27.

---

1. Defendant Korn attached a declaration in support of her motion to dismiss, which plaintiff moves to strike. Mem. in Opp. p. 2 n.1. In ruling on a motion to dismiss, "the court is to look only to the allegations of the complaint and any documents attached to or incorporated by reference in the complaint." *Dangler v. New York City Off Track Betting Corp.*, 193 F.3d 130, 138 (2d Cir. 1999). *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (holding that in addition to the complaint, a court may consider "any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference"). Defendant's declaration contains unsupported factual averments that are beyond the scope of this motion. Accordingly, the trustee's motion to strike the Korn declaration is granted and the document is so stricken.

2. The relevant facts are taken from plaintiff's complaint and are assumed true for the purpose of defendant's motion to dismiss. *See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164 (1993) ("We review here a decision granting a motion to dismiss, and therefore must accept as true all the factual allegations in the complaint."). Furthermore, "the allegations of the complaint should be construed favorably to the pleader." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

Plaintiff seeks a judgment under Bankruptcy Code § 544(b), avoiding the transfers pursuant to New York Debtor and Creditor Law §§ 273, 274, 275, 276 and 276-a; and pursuant to Bankruptcy Code §§ 550(a) and 551, recovering from defendant an amount to be determined, but no less than $2,014,142. Korn & Spirn was a law firm partnership with its principal offices located at 50 Clinton Street, Hempstead, New York. *Id.* at ¶ 8. Jay Korn and Arthur Spirn ("partners") were partners of the debtor. *Id.* at ¶ 9. On November 17, 2010 ("filing date"), an involuntary Chapter 7 petition was filed by three petitioning creditors pursuant to Bankruptcy Code § 303(b) against Korn & Spirn in the United States Bankruptcy Court for the Eastern District of New York. *Id.* at ¶ 10. On December 22, 2010, an Order for Relief was entered. *Id.* at ¶ 10. Thaler was appointed as interim trustee in the Korn & Spirn case and is now the permanent trustee. *Id.* at ¶ 11.

*Facts*

Creditors of the debtor Korn & Spirn claimed that they provided funds to Korn & Spirn to be held in escrow by the debtor for, *inter alia*, the purposes described below. *Id.* at ¶ 13. Korn & Spirn and their "finders" ("finders") solicited individuals ("investors") to invest in purported real estate and other business ventures ("investments") which were supposed to generate high returns for the investors. *Id.* at ¶ 14.

Pursuant to the terms of the contracts between the debtor and investors, the investors could either receive payments from their investments in the form of "interest payments" or "roll-over" their investments into a future transaction or be refunded the investment principal. *Id.* at ¶ 19. The representations made to the investors were largely false. *Id.* at ¶ 20. The investors' funds were: commingled with the debtor and/or clients' funds; utilized to pay prior investors their promised rate of interest or to provide a return on their investment; utilized to pay the operating expenses of Korn & Spirn; and/or transferred to Jay Korn and/or his family members for his/their personal

enrichment to the detriment of Korn & Spirn's legitimate creditors. *Id.* at ¶ 21. Plaintiff's knowledge of the debtor's scheme to sell fictitious participation notes to investors and use the proceeds from the sale of the notes to later investors to pay off prior investors ("note fraud" or "Ponzi scheme") is based upon: a review of the debtor's documents seized from the debtor's offices by the Nassau County District Attorney's Office and the Consumer Frauds Bureau; depositions of the debtor's former employees; a review of the documents provided by the investors, Bank of America, TD Bank and Astoria Federal Savings; and interviews with the investors. *Id.* at ¶ 22.

Investors' funds were deposited into the Korn & Spirn Bank of America attorney escrow account ("escrow account") and/or the Korn & Spirn Bank of America attorney trust account ("trust account" or, collectively, "trust accounts"). Funds were also transferred from the trust accounts into Jay Korn's and defendant Ellen Korn's personal bank accounts, other personal accounts of family members or the law firm's operating account ("operating account"). *Id.* at ¶25. The Ponzi scheme fell apart when Jay Korn committed suicide on March 26, 2010 and then current financial obligations were not met. *Id.* at ¶ 26.

According to the complaint, defendant is a person who received payments from the debtor, either directly or indirectly or in a representative capacity; and received millions of dollars from Korn & Spirn for which Korn & Spirn received no corresponding benefit or value and to which defendant had no good faith basis to believe she was entitled. *Id.* at ¶ 28. In addition, defendant knew, or had reason to know, that the joint income tax returns she signed failed to include hundreds of thousands of dollars of unreported income. During the time period June 1, 2005 through March 31, 2010, approximately $1,241,600 was deposited into Jay Korn's and defendant's personal bank accounts from the trust accounts. Approximately $772,524 was deposited into Jay

-3-

Korn's and defendant's personal banking account from the operating account. *Id.* at ¶ 29.

*Transfers to Defendant*

The transfers to defendant's personal banking accounts were as follows: from June 1, 2005-December 31, 2005, $108,000 was transferred from the trust accounts and $88,843 from the operating account for a total of $196,943; from January 1, 2006-December 31, 2006, $267,500 was transferred from the trust accounts and $164,347 from the operating account for a total of $431,847; from January 1, 2007-December 31, 2007, $271,000 from the trust accounts and $162,378 from the operating account for a total of $433,378; from January 1, 2008-December 31, 2008, $278,200 from the trust accounts and $179,518 from the operating account for a total of $457,718; from January 9, 2009-December 31, 2009, $243,550 from the trust accounts and $143,706 from the operating account for a total of $387,256; and from January 1, 2010-March 31, 2010, $73,250 from the trust accounts and $33,750 from the operating account for a total of $107,000. The total received from the trust accounts was $1,241,600; from the operating account $772,542, for a total sum of $2,014,142. *Id.* at ¶ 31.

Defendant's net income for the corresponding personal income tax years was: June-December 2005, $34,507; January-December 2006, $118,895; January-December 2007, $64,796; January-December 2008, $116,844; January-December 2009, $72,902; and January-March 2010, ($17,228). *Id.* at ¶ 32. Korn & Spirn was either insolvent when the transfers were made or rendered insolvent as a result of the transfers. *Id.* at ¶ 33. At the time the transfers were made, Korn & Spirn had unsecured creditors who remained unsecured creditors as of the filing date of the bankruptcy action. *Id.* at ¶ 34.

Plaintiff, the Chapter 7 trustee of the bankruptcy estate of Korn & Spirn, brought this action against Jay Korn's widow, defendant Ellen Korn, to recover the transferred funds to the extent

possible for the benefit of the debtor's estate. *Id.* at ¶ 29.

## II. Discussion

### A. Legal Standard for a Motion to Dismiss

When considering a motion to dismiss a complaint for failure to state a claim, the court must assume as true all allegations contained in the complaint. *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998). However, it is "well settled that conclusory allegations merely stating general legal conclusions necessary to prevail on the merits of a claim, unsupported by factual averments will not be accepted as true." *ECOR Solutions, Inc. v. Malcolm Pirnie, Inc.*, No. 02 Civ. 1103, 2005 WL 1843253, at *3 (N.D.N.Y. July 29, 2005). The Supreme Court has held that a "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). On FRCP 12(b)(6) motions, the court must assess the legal feasibility of the complaint and whether a plaintiff has pled claims for which he or she is entitled to discovery. *Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir. 2000); *Chance*, 143 F.3d at 701.

In *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), the Supreme Court held that courts should entertain a motion to dismiss by following a two-pronged approach:

> [A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

The Federal Rules of Civil Procedure require a "short plain statement of the claim showing that the pleader is entitled to relief." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308,

319 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). Rule 8(a)(2) requires that a pleading set forth facts that the pleader is entitled to relief and provide a defendant with fair notice. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Federal Rule of Civil Procedure 9(b) provides, in pertinent part, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." A "claim for actual fraudulent transfer pursuant to § 548(a)(1)(A) or applicable State law must satisfy the requirements of Rule 9(b) of the Federal Rules of Civil Procedure." *In re Geltzer*, 502 B.R. 760, 766 (Bankr. S.D.N.Y. 2013). "These pleading requirements, however, do not apply to claims of constructive fraudulent conveyance under § 548(a)(1)(B) and applicable State law, because they are based on the transferor's financial condition and the sufficiency of the consideration provided by the transferee, not on fraud." *In re Verestar, Inc.*, 343 B.R. 444, 460 (Bankr. S.D.N.Y. 2006).

Pursuant to the Bankruptcy Code, for the purposes of FRCP 9(b), an actual fraudulent transfer claim ordinarily requires plaintiff to allege: "(i) the property that was conveyed; (ii) the timing and, if applicable, frequency of the transfer; and (iii) the consideration (if any) paid for the transfer." *In re Arbco Capital Management, LLP*, 498 B.R. 32, 40 (Bankr. S.D.N.Y. 2013). Where, however, the actual fraudulent transfer claim is asserted "by a bankruptcy trustee, applicable Second Circuit precedent instructs courts to adopt 'a more liberal view . . . since a trustee is an outsider to the transaction who must plead fraud from second-hand knowledge.' " *Id.* (quoting *Nisselson v. Softbank AM Corp.*, 361 B.R. 369, 395 (Bankr. S.D.N.Y. 2007)).

B.   **Analysis**

   *Plaintiff's Claims Alleging Constructive Fraud*

Defendant moves to dismiss plaintiff's first, second and third claims, which are based upon

New York's Debtor and Creditor Law ("DCL"), and plaintiff's seventh claim, which is based upon 11 U.S.C. § 548(a)(1)(B). Defendant contends that the claims do not satisfy the heightened pleading requirements of FRCP 9(b). Defendant argues that in cases where the complaint sounds in fraud, the claims must be pled with particularity pursuant to 9(b).

Pursuant to New York's DCL §§ 273-276, the "Trustee must establish that the transfer in question 1) was made for less than fair consideration, and while the transferor 2) was insolvent or was thereby rendered insolvent (§ 273), had unreasonably small capital to operate the business (§ 274), or intended or believed that he or she would incur debts beyond his or her ability to pay as they matured (§ 275)." *Securities Investor Protection Corp. v. Stratton Oakmont, Inc.*, 234 B.R. 293, 319 (Bankr. S.D.N.Y. 1999) (citations omitted). "The pleading of constructive fraud, as opposed to actual fraud, must only comply with FRCP 8(a) because scienter is not an element; the claim is based upon the financial condition of the transferor at the time of the transfer and the sufficiency of the consideration provided by the transferee." *See In re White Metal Rolling and Stamping Corp.*, 222 B.R. 417, 428-29 (Bankr. S.D.N.Y. 1998) ("Although tagged with the title 'fraudulent,' fraud has nothing to do with the constructive fraudulent transfer claim. The transaction is based on the transferor's financial condition and the sufficiency of the consideration provided by the transferee.").

Plaintiff alleges fraudulent conveyance pursuant to DCL § 273, which provides that "[e]very conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration." Plaintiff alleges that the debtor Korn & Spirn was either insolvent at the time the transfers were made, or was rendered insolvent

by the transfers. Compl. ¶ 36.

Plaintiff's second claim is for fraudulent conveyance pursuant to DCL § 274, which provides:

> Every conveyance made without fair consideration when the person making it is engaged or is about to engage in a business or transaction for which the property remaining in his hands after the conveyance is an unreasonably small capital, is fraudulent as to creditors and as to other persons who become creditors during the continuance of such business or transaction without regard to his actual intent.

Plaintiff alleges that at the time of the transfers, the debtor engaged or was about to engage in a business or transaction for which the property remaining in its possession after the transfers was unreasonably small capital. Compl. ¶ 42.

In the third claim, plaintiff alleges fraudulent conveyance under DCL § 275 and contends that at the time of the transfers, the debtor incurred, intended to incur, or believed it would incur debts beyond its ability to pay them as they matured. Compl. ¶ 46. New York's DCL § 275 provides that "[e]very conveyance made and every obligation incurred without fair consideration when the person making the conveyance or entering into the obligation intends or believes that he will incur debts beyond his ability to pay as they mature, is fraudulent as to both present and future creditors."

Combined with the other allegations in the complaint, the specific allegations accompanying the claims are sufficient and defendant's motion to dismiss plaintiff's first, second and third claims is therefore denied.

In claim seven (7), plaintiff alleges constructive fraud pursuant to the Bankruptcy Code, 11 U.S.C § 548(a)(1)(B), which provides:

> The trustee may avoid any transfer . . . of an interest of the debtor in property, or any obligation . . . incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or

involuntarily—

(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

(II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;

(III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or

(IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

The claim is based on at least 201 transfers, totaling $552,939, made within two (2) years of the filing date of the bankruptcy action ("two-year transfers"). Compl. ¶ 57. The complaint also alleges that the debtor received less than the reasonably equivalent value in exchange for the two-year transfers. Compl. ¶ 63. The two-year transfers were part of a Ponzi scheme and the debtor: (i) was insolvent on the date the two-year transfers were made or became insolvent as a result of those transfers; (ii) was engaged in a business or transaction, was about to engage in a business or transaction, for which any property remaining with the Debtor was unreasonably small capital; and/or (iii) intended to incur, or believed it would incur, debts they would be unable to pay at their maturity. *Id.* at ¶ 64. At the time of each of the two-year transfers, defendant knew or should have known of the Ponzi scheme, note fraud and/or the fabrications of her husband, Jay Korn and, therefore, she received the transfers without good faith. *Id.* at ¶ 66.

These allegations, considered with the complaint's general allegations, satisfy FRCP 8 because they give defendant notice of the grounds on which the claims are based. Furthermore,

because the claims are founded on the transferor's financial condition and not his actual intent, Rule (9)(b) is not implicated. Accordingly, defendant's motion to dismiss plaintiff's federal constructive fraud claim is also denied.

### *Plaintiff's Claims for Actual Fraud*

Defendant moves for dismissal of claims four (4) and six (6) pursuant to FRCP 9(b) based upon the trustee's failure to allege facts establishing that defendant had actual knowledge of the debtor's partner's fraudulent conduct.

"It is the intent of the transferor and not that of the transferee that is dispositive." *Securities Investor Protection Corp. v. Stratton Oakmont, Inc.*, 234 B.R. 293, 318 (Bankr. S.D.N.Y. 1999). *See Mendelsohn v. Jacobowitz*, 394 B.R. 646, 658–59 (Bankr. E.D.N.Y. 2008) (same); *Crowthers McCall Pattern, Inc. v. Lewis*, 129 B.R. 992, 999 (Bankr. S.D.N.Y. 1991) (holding that "it is the intent of the transferor and not the intent of the transferee that is relevant to liability under § 276"). "The intent of the transferee only becomes relevant as an affirmative defense if the defendant is not the initial transferee." *Securities Investor Protection Corp.*, 234 B.R. at 318. Here, the trustee is alleging that defendant was a direct beneficiary of the transferor. Moreover, "[a]s a matter of law, the 'Ponzi scheme presumption' establishes the debtors' fraudulent intent as required under both the Code and the NYDCL. *In re Bernard L. Madoff Inv. Securities LLC*, 458 B.R. 87, 104 (Bankr. S.D.N.Y. 2011) (citing *In re Dreier LLP*, 452 B.R. 391, 428 (Bankr. S.D.N.Y. 2011)). "There is a presumption of actual intent to defraud because 'transfers made in the course of a Ponzi scheme could have been made for no purpose other than to hinder, delay or defraud creditors.' " *Id.* at 104 (quoting *In re Dreier*, 452 B.R. at 423).

Plaintiff's fourth claim for fraudulent conveyance pursuant to DCL § 276 alleges that the transfers were made with actual intent to hinder, delay or defraud present or future creditors of the

-10-

debtor. Compl. ¶ 50. New York's DCL § 276 provides: "Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors."

Plaintiff's sixth claim for fraudulent conveyance pursuant to the Bankruptcy Codes' actual fraud provision, 11 U.S.C. § 548(a)(1)(A), is based on the two-year transfers discussed above in connection with the Code's constructive fraud provision, 11 U.S.C. § 548(a)(1)(B). Title 11 U.S.C. § 548(a)(1)(A) provides:

> The trustee may avoid any transfer . . . of an interest of the debtor in property, or any obligation . . . incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily–
>
> made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted . . . .

The complaint alleges that the two-year transfers were part of the Ponzi scheme, and the debtor: was insolvent on the date the two-year transfers were made or became insolvent as a result of those transfers; was engaged in a business or transaction, or was about to engage in a business or transaction, for which any property remaining with the Debtor would be unreasonably small capital; and/or intended to incur, or believed it would incur, debts that it would be unable to pay when they matured. Compl. ¶ 58. At the time each two-year transfer was made, defendant knew or should have known of the Ponzi scheme, note fraud and/or the fabrications of her husband, Jay Korn. Thus, defendant received the two-year transfers without good faith and with knowledge of their avoidability. *Id.* at ¶ 59. The two-year transfers constitute avoidable transfers based on the statute. *Id.* at ¶ 60.

Thus, accepting the allegations as true, the trustee has satisfied the heightened pleading requirement for actual fraud claims as required by FRCP 9(b). Even assuming the allegations did not state a claim for actual fraud, plaintiff is entitled to use the Ponzi scheme presumption of actual fraud to demonstrate the debtor's partner's intent to defraud based on the complaint's plausible contentions that Jay Korn engaged in such a scheme. Because the trustee has adequately alleged actual fraud on the part of the transferor, defendant's motion to dismiss the actual fraud claims is denied.

### *Plaintiff's Claim for Attorney's Fees Pursuant to DCL § 276-a*

Defendant also moves to dismiss plaintiff's fifth claim for attorney's fees pursuant to DCL § 276-a on the ground that the transfers were not "made by the debtor and received by the transferee with actual intent as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors." DCL § 276-a.

"The purpose of section 276-a is to 'make whole' a creditor, or here a Trustee, who had to 'expend resources to bring a lawsuit by shifting the legal costs of the action to the [defendant] whose fraud has necessitated the litigation.' ") *In re Janitorial Close-Out City Corp.*, No. 11 B.R. 8952, 2013 WL 492375, at *7 (E.D.N.Y. Feb. 8, 2013) (quoting *In re Alesius*, No. 08 B.R. 8099, 2011 WL 1791558, at *2 (Bankr. E.D.N.Y. May 10, 2011)). "By its terms, DCL § 276-a is derivative of an actual fraudulent transfer claim under DCL § 276." *In re Drier*, 462 B.R. at 494. Thus, a plaintiff is only entitled to attorney's fees if he or she prevails under § 276. *Id.* Because the trustee has stated a claim for actual fraudulent transfer under § 276, the claim for attorney's fees is not ripe for determination in connection with defendant's motion to dismiss since plaintiff must succeed on the actual fraudulent transfer claim at trial. Accordingly, defendant's motion to dismiss plaintiff's claim for attorney's fees is denied without prejudice to renew after the DCL §

276 claim is decided.

### *Plaintiff's Request to Disallow Defendant's Claims in the Bankruptcy Proceeding*

Plaintiff's eighth claim seeks to disallow any proofs filed by defendant in support of her claims in the bankruptcy case, pursuant to 11 U.S.C. § 502(d), unless and until defendant pays to plaintiff an amount equal to the aggregate amount of the transfers, plus interest and costs. Compl. ¶¶ 68-73. Defendant argues that the claim is either moot because the trustee does not allege that defendant filed a proof of claim in the first place or that the claim fails because the trustee has not filed a viable avoidance claim.

In pertinent part, 11 U.S.C. § 502(d) provides: "the court shall disallow any claim of any entity from which property is recoverable under . . . 550 . . . of this title or that is a transferee of a transfer avoidable under . . . 544 . . . [or] 548 . . . of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section . . . 550 . . . of this title.

The "plain language of section 502(d) does not condition disallowance on the transferee's failure to satisfy a judgment; instead, it states that "the court shall disallow any claim of any entity from which property *is recoverable* . . . under section 550." *In re Red Dot Scenic, Inc.*, 313 B.R. 181, 185 (Bankr. S.D.N.Y. 2004). To " 'assure the effectuation of the purpose of this section, a claim may be disallowed at least temporarily and for certain purposes, subject to reconsideration, simply upon the allegation of an avoidable transfer.' " *Id.* at 186 (quoting 4 *Collier on Bankruptcy* ¶ 502.05[2][a] at 502-59).

Given the foregoing, the trustee's claim is neither moot nor premature and, consequently, defendant's motion to dismiss the disallowance claim is denied.

### III. Conclusion

For all of the foregoing reasons, defendant's motion to dismiss plaintiff's complaint is denied as to claims one (1), two (2), three (3), four (4), six (6), seven (7) and eight (8) and denied without prejudice to renew as to claim five (5).[3]

**SO ORDERED.**

Date: March 19, 2014
        Central Islip, New York

                                                      s/ Sandra J. Feuerstein
                                                      Sandra J. Feuerstein, U.S.D.J.

---

3. On the second to last page of defendant's memorandum in support of this motion, defendant requests that decision on the motion be stayed pending determination of her motion to withdraw the bankruptcy reference (DE 1). Mem. in Supp. p. 15. On June 24, 2013, however, the motion to withdraw the reference was granted. DE 5. Accordingly, defendant's request to stay determination of this motion is denied as moot.